

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00208-CR
No. 07-18-00209-CR
_____

JADE DERRICK SCALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 70,813-B; Honorable John B. Board, Presiding

March 11, 2020

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Jade Derrick Scales, was convicted of two counts of cruelty to non-livestock animals[1] alleged to have been committed on February 8, 2015. Because the law applicable to the offense of cruelty to non-livestock animals was amended

---

[1] *See* TEX. PENAL CODE ANN. § 42.092(b)(1) (West Supp. 2019).

subsequent to the alleged commission of the offense charged, we apply the law in effect on the date of the offense. *See* Act of May 25, 2017, 85th Leg., R.S., ch. 739, § 9, 2017 Tex. Gen Laws 3157, 3160. Accordingly, as charged, each offense was a state jail felony. TEX. PENAL CODE ANN. § 42.092(c) (West Supp. 2019).

The range of punishment for each offense was enhanced to that of a third degree felony as a result of a finding regarding the use or exhibition of a deadly weapon during the commission of the offense or during immediate flight following the commission of the offense. *See id.* at § 12.35(c)(1) (West Supp. 2019). The range of punishment was further enhanced to that of a second degree felony by virtue of a prior felony conviction to which Appellant pleaded "true." *See id.* at § 12.425(c) (West Supp. 2019).[2]

Punishment was assessed by the jury at seven years confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $2,000, as to each count. The trial court ordered the two sentences to be served concurrently. Raising five issues, Appellant contends: (1) the evidence is insufficient to support the deadly-weapon finding, (2) the trial court erred by failing to instruct the jury that a deadly-weapon finding is only appropriate when the weapon is used or exhibited against a human being, (3) trial counsel provided ineffective assistance of counsel because (a) he did not request a jury instruction concerning the use of a deadly weapon and (b) he failed to object to the amendment of the indictment, (4) prosecution of two identical indictments, at the same time, for the same conduct, violates double jeopardy and due process principles, and (5) he was subjected to an illegal sentence because the range of

---

[2] An offense "punished as" a higher offense raises the level of punishment, not the degree of the offense. *Oliva v. State,* 548 S.W.3d 518, 526-27 (Tex. Crim. App. 2018).

punishment for the offense for which he was convicted was illegally enhanced.[3] We affirm.

## BACKGROUND

Appellant does not challenge the sufficiency of the evidence concerning the merits of the charge. What he does challenge is the appropriateness of a deadly-weapon finding where the victim of the offense is a nonhuman. Accordingly, we will limit our discussion of the evidence to those facts relevant to Appellant's specific issues.

At trial, Michelle Stopka testified that on February 8, 2015, she was residing with Leonard Willey at a residence located in Amarillo, Potter County, Texas. Living with her at that residence were two terrier puppies, Beau and Little One, which she had taken in after finding them in an alley. On that particular day, she was confronted in her front yard by a man holding a knife and wearing a white mask and brass knuckles. Michelle yelled for Leonard and he quickly confronted the masked man. During that brief confrontation Leonard sustained a cut to his head and the masked man sustained a cut to his leg. Although the man in the white mask left the scene before the police arrived, evidence soon established Appellant as that man.

After the masked man had left, Michelle went to check on her two puppies. She found them lying on their backs, sliced open and bleeding. The puppies did not survive their injuries. At trial, Dr. Stacy Smith, a veterinarian, testified that the puppies' injuries were caused by a sharp instrument, such as a knife. She further opined that the puppies

---

[3] Appellant originally raised only the first three issues. By order of the court for supplemental briefing, Appellant raised issues four and five. The State was likewise granted the opportunity to respond to Appellant's Supplemental Brief.

had been killed in a cruel manner that caused them serious bodily injury, accompanied by severe pain and suffering.

Appellant was arrested and charged with cruelty to a non-livestock animal originally identified simply as "a black and white dog." The indictment also contained a deadly-weapon notice and an enhancement paragraph alleging a prior conviction for the second-degree-felony offense of burglary of a habitation. On May 3, 2018, the State moved to amend the indictment to allege two identical counts of cruelty to non-livestock animals, one for each puppy killed. The two identical counts in the amended indictment simply identified the subject of the cruelty to non-livestock animals as being "a dog." Appellant's counsel did not object to the amended indictment and on May 10, 2018, the trial court granted the State's motion to amend. Trial commenced on May 14, 2018, and the jury returned its guilty verdicts on May 17.

### ISSUE ONE—DEADLY-WEAPON FINDING

In 2017, after carefully considering the legislative history of section 42.092(b)(1) of the Texas Penal Code pertaining to cruelty to non-livestock animals, the Texas Court of Criminal Appeals concluded that the Legislature did not intend to permit a deadly-weapon finding in those situations where the only "recipient" of the use or exhibition of a deadly weapon was a nonhuman. *See Prichard v. State*, 533 S.W.3d 315, 330 (Tex. Crim. App. 2017). The facts in *Prichard* were that the appellant killed his pet dog by repeatedly hitting it in the head with a shovel and then drowning it in a swimming pool. Other than Prichard himself, no humans were involved and there was no evidence showing that any human had been harmed or placed at risk of harm during the commission of the offense as a result of his conduct. At trial, the jury returned a verdict that included a deadly-weapon

4

finding and the Fifth Court of Appeals subsequently affirmed the trial court's judgment. *Prichard v. State*, No. 05-14-01214-CR, 2016 Tex. App. LEXIS 4126, at *1 (Tex. App.— Dallas April 20, 2016), *rev'd*, 533 S.W.3d 315 (Tex. Crim. App. 2017).

In reversing the judgment of the court of appeals, the Court of Criminal Appeals acknowledged that the question before the court was "exceedingly narrow" and limited to the facts of that case. *Prichard*, 533 S.W.3d at 321. The Court found that the evidence was insufficient to support a deadly-weapon finding "under circumstances in which the *sole* recipient or being against whom a deadly weapon was used or exhibited was a nonhuman." *Id.* at 331. (Emphasis added). Subsequent to *Pritchard*, the First Court of Appeals, in *Galindo v. State*, 564 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2018, no pet.), held that the Court of Criminal Appeals' reference to the "sole" object of the use of a deadly weapon "left open the possibility of a deadly-weapon finding under circumstances where the weapon was used or exhibited against a human during the commission of an offense against an animal." *Id.* The First Court of Appeals found that, in the case before it, the evidence was legally sufficient to support a deadly-weapon finding because there was evidence that showed the nonhuman victim (a dog) was not the "sole" object of the defendant's use or exhibition of a deadly weapon because, while in the course of committing the offense of cruelty to non-livestock animals, the defendant had also threatened bystanders with the same knife that he used to injure the dog. *Id.*

Here, Appellant asks this court to expand the Court of Criminal Appeals' reasoning in *Prichard* to every case where the indictment or notice fails to allege a human victim. That is not, however, what the Court held in *Prichard*. To the contrary, the Court held that there is nothing in the deadly-weapon statute that suggests the Legislature did not intend

5

to permit a finding "anytime the facts established that a deadly weapon was used or exhibited *against a person with intent to facilitate an offense.*" *Prichard*, 533 S.W.3d at 325. (Emphasis added). The general purpose of the deadly-weapon statute "is to provide more severe punishment against actors who risk serious bodily injury or death for crimes against people" during the commission of an offense. *Id.* at 327. This policy of protecting people from criminals who use deadly weapons to commit their offenses would be diminished if the provisions of the statute were limited to actual victims named in the indictment. If Appellant's argument were to be universally applied to all offenses, a deadly-weapon finding would never be appropriate in a drug possession case unless the indictment or deadly-weapon notice alleged the use or exhibition of the weapon *against a particular person.* Based on the number of cases involving possession of a controlled substance containing a deadly-weapon finding that have been affirmed, that would be an entirely illogical position to take. Accordingly, we are confident that requiring the human victim to be named in the indictment was not the intent of the Legislature. For us to require that a charging instrument specify the person against whom a deadly weapon was used or exhibited in order to justify a deadly-weapon finding would be "legislating from the bench" and, as such, a gross abuse of judicial authority.

Here, the evidence establishes that Appellant brandished and even used a knife, in the course of his flight from the offense in question, when he confronted Leonard. A reasonable juror would be justified in finding that confrontation occurred during the course of, or immediate flight from, the underlying offense. As such, where the evidence presented at trial established that a deadly weapon was used against a human, during the course of the commission of the offense or during the immediate flight following the

commission of that offense, we conclude a deadly-weapon finding was statutorily authorized.

Because we find a deadly-weapon finding was appropriate, we are persuaded that Appellant was appropriately punished pursuant to the provisions of section 12.35(c)(1) of the Code. *See* Tex. Penal Code Ann. § 12.35(c)(1) (West Supp. 2019) (providing for the enhancement of punishment from a state jail to a third degree felony where the accused has used a deadly weapon during the commission of a state jail felony or during the immediate flight following the commission of a state jail felony).

Furthermore, where, as here, "it is shown on the trial of a state jail felony for which punishment may be enhanced under section 12.35(c) that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree." *See id.* at § 12.425(c). Therefore, under the facts of this case, where the offense was punishable under section 12.35(c), and the State was able to establish that Appellant had previously been convicted of the felony offense of burglary of a habitation, the appropriate range of punishment for this offense was the range of punishment applicable to a second degree felony. Issue one is overruled.

### ISSUE TWO—JURY INSTRUCTION ERROR

By his second issue, Appellant contends the trial court erred by failing to instruct the jury that a deadly-weapon finding is only appropriate when the weapon is used or exhibited against a human being. In assessing jury charge error in a criminal case, an appellate court engages in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649

7

(Tex. Crim. App. 2012). First, we must determine if the court's charge contains error. *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). Second, if error occurred, then an appellate court must analyze that error for harm. *Kirsch*, 357 S.W.3d at 649.

The State contends the trial court did not err in failing to give the requested instruction because such an instruction was "not applicable to the facts of the case." By this logic, the deadly-weapon *finding* itself would be not be applicable to the facts of the case and should have been excluded—a result the State otherwise argues against. Where, as here, the State relies upon a deadly-weapon finding to support the range of punishment it contends applies, an appropriate deadly-weapon instruction should have been given. Because no instruction was given, the trial court erred.

Where, as here, Appellant's counsel neither requested an appropriate instruction, nor objected to the absence of such an instruction in the court's charge, we review the trial court's failure to provide an appropriate instruction for "egregious harm." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Egregious harm is a "high and difficult standard which must be borne out by the trial record." *Reeves v. State,* 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

When reviewing harm resulting from charge error, an appellate court must determine harm in light of four factors: (1) the entire jury charge, (2) the state of the

8

evidence, including contested issues and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 174. Additionally, there is no burden of proof or persuasion in a harm analysis conducted under *Almanza*. *See Anaya v. State*, 381 S.W.3d 660, 665 (Tex. App.—Amarillo 2012, pet. ref'd).

Under the facts of this case, a proper jury instruction would have advised the jury that a deadly-weapon finding could only be made if the jury were to determine beyond a reasonable doubt that a deadly weapon was used or exhibited by the defendant against a human being during the course of the commission of the underlying offense or during the immediate flight following the commission of that offense. As discussed above, given the state of the evidence and the arguments of counsel, there is little doubt the jury could have reasonably believed Appellant used the same sharp instrument used in the commission of the underlying offense to inflict the wound suffered by Leonard. As such, it is also reasonable to assume that same jury would have been persuaded that Leonard's injuries were sustained during Appellant's immediate flight following the commission of the offense at issue. Because there is no reasonable likelihood that the failure to include an appropriate instruction materially affected the jury's deliberations or verdict, the error was not egregious. Issue two is overruled.

### ISSUE THREE—INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, Appellant contends his trial counsel provided ineffective assistance of counsel because (a) he did not request a jury instruction concerning the use of a deadly weapon and (b) he failed to object to the amendment of the indictment. The United States Constitution's guarantee of the right to counsel encompasses the right

9

to effective assistance of counsel.  U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts apply the two-pronged test enunciated in *Strickland.  See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc).  First, the appellant must show that counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88.  Second, the appellant must show that he was prejudiced by counsel's deficient performance.  *Id.*  To establish prejudice, an appellant must show that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different.  *Id.* at 687.

Judicial review of a claim of ineffective assistance of counsel must be highly deferential, and there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.  *See id.* at 689.  Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim.  *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

As stated above, because it is reasonable to conclude that the trial court's failure to give the jury an appropriate deadly-weapon instruction did not materially affect the jury's deliberations or verdict, it is likewise reasonable to conclude that counsel's failure to request such an instruction was harmless.  As to counsel's failure to object to the amendment of the indictment, we find counsel's decision in such a situation to be a matter that lies within the wide range of reasonable professional assistance.  Because there is nothing in the record to show why counsel chose not to object to the amendment of the

10

indictment, we cannot say with certainty that counsel's performance was deficient or that it fell below an objective standard of reasonableness. Without some indication of trial counsel's strategy, we cannot meaningfully evaluate his reasons for not objecting. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (finding that in most cases "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional"). Issue three is overruled.

### ISSUE FOUR—DOUBLE JEOPARDY AND DUE PROCESS

By his fourth issue, Appellant contends his prosecution, based on two identical indictments for the same conduct committed in one criminal episode, violated double jeopardy and due process principles.

By way of a single-count indictment, Appellant was originally charged with cruelty to a non-livestock animal simply identified as "a black and white dog." On May 3, 2018, eleven days prior to trial, the State filed a *Motion to Amend* that indictment to allege two separate but identical counts of cruelty to non-livestock animals. Each count of the amended indictment identified the animal that was the object of the cruel treatment simply as "a dog." Appellant's counsel did not object to the amended indictment and on May 10, 2018, four days prior to trial, the court granted the State's motion. At no time did Appellant raise the issue of double jeopardy to the trial court. On appeal, Appellant contends he is being subjected to multiple punishments for the same offense—a violation of the Double Jeopardy Clause of the United States Constitution—because the indictments are identical.

Normally, a claim of double jeopardy must be preserved. One does this by raising the matter "at or before the time the charge [is] submitted to the jury." *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (stating that "we agree with the Court of Appeals that appellant had the burden to 'preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury'"); *Kalie v. State*, No. 09-11-00352-CR, 2012 Tex. App. LEXIS 5112, at *7-8 (Tex. App.—Beaumont June 27, 2012, no pet.) (mem. op., not designated for publication). Because that was not done here, Appellant has failed to preserve his complaint.

There is, however, an exception to the preservation rule described in *Gonzalez.* As stated in *Ex parte Denton*, 399 S.W.3d 540, 544-45 (Tex. Crim. App. 2013), "a double-jeopardy claim may be raised for the first time on appeal or on collateral attack if two conditions are met: 1) the undisputed facts show that the double-jeopardy violation is clearly apparent on the face of the record; and 2) when enforcement of the usual rules of procedural default serves no legitimate state interest." A double jeopardy claim is "apparent on the face of the record" when additional proceedings are not required for the purpose of introducing evidence to support the alleged violation. *Id.* The mere fact that a jury's verdict "*could* have relied on a theory that would violate the Double Jeopardy Clause is not sufficient to show a constitutional violation is 'clearly apparent on the face of the record.'" *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006). (Emphasis in original).

Here, the record establishes that, although indistinguishable in the description, two separate dogs were the object of the criminal act being prosecuted. Because each dog

could have constituted a separate unit of prosecution,[4] the record does not clearly establish a double jeopardy claim "apparent on the face of the record." Accordingly, we find Appellant did not preserve this alleged error. Issue four is overruled.

### ISSUE FIVE—ILLEGAL SENTENCE

By his fifth issue, Appellant contends his sentence is illegal because the range of punishment for the offense for which he was convicted was illegally enhanced. As stated above, the offense of cruelty to non-livestock animals is a state jail felony. TEX. PENAL CODE ANN. § 42.092(c). The range of punishment for cruelty to non-livestock animals is enhanced to that of a third degree felony if there is a finding regarding the use or exhibition of a deadly weapon during the commission of the offense or during immediate flight following the commission of the offense. *See id.* at § 12.35(c)(1). Furthermore, if it is shown on the trial of a state jail felony for which punishment has been enhanced under section 12.35(c) (the situation we have here) that the defendant has previously been finally convicted of another felony, other than a state jail felony punishable under section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree. *See id.* at § 12.425(c). Here, we have just that. Appellant was charged with the offense of cruelty to non-livestock animals, a state jail felony. The range of punishment for that offense was enhanced by the use of a deadly weapon and that enhanced punishment

---

[4] Whether cruelty towards multiple animals constitutes a single unit or multiple units of prosecution appears to depend on whether those animals are usually and customarily viewed as pets or food products. *See Hoffman v. State*, Nos. 09-17-00172-CR through 09-17-00176-CR, 2018 Tex. App. LEXIS 9277 (Tex. App.—Beaumont 2018, pet. ref'd) (mem. op., not designated for publication) (affirming five separate convictions for cruelty to five horses); *Gonzalez v. State*, No. 12-11-00128-CR, 2012 Tex. App. LEXIS 2660 (Tex. App.—Tyler March 30, 2012, pet. ref'd) (mem. op., not designated for publication) (single conviction in prosecution involving two roosters); *State v. Almendarez*, 301 S.W.3d 886 (Tex. App.—Corpus Christi 2009, no pet.) (two counts for two horses); *Qaddura v. State*, No. 02-05-361-CR, 2007 Tex. App. LEXIS 1493 (Tex. App.—Fort Worth 2007, pet. ref'd) (mem. op., not designated for publication) (single prosecution involving ninety-three goats).

was further enhanced to that of a second degree felony by virtue of a prior felony conviction to which Appellant pleaded "true."

An offense "punished as" a second degree felony is punishable by imprisonment in the Texas Department of Criminal Justice for any term of not more than twenty years or less than two years and by a fine not to exceed $10,000. *See id.* at § 12.33. Because the jury assessed Appellant's sentence at seven years confinement and a fine of $2,000, as to each count, said sentences were not illegal. Accordingly, Appellant's fifth issue is overruled.

## CONCLUSION

Having overruled each of Appellant's issues, the trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Publish.